*Cross Commerce Media, Inc. v. Collective, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2015

(Argued:  February 10, 2016     Decided:  November 7, 2016)

Docket No. 15-782

───────────────────

Cross Commerce Media, Inc.,
*Plaintiff—Counter-Defendant—Appellee,*

v.

Collective, Inc.,
*Defendant—Counter-Claimant—Appellant.*

───────────────────

Before:        KEARSE, POOLER, and SACK, *Circuit Judges.*

Collective, Inc. and Cross Commerce Media, Inc., two companies that

provide data-driven analytic software to businesses, dispute whether several of

Collective's trademarks are valid and, if so, have been infringed by Cross

Commerce Media's marks.  In a series of decisions, the United States District

Court for the Southern District of New York (Katherine B. Forrest, *Judge*) granted

summary judgment for Cross Commerce Media and awarded it attorney's fees

under the Lanham Act.  We reverse those decisions in part, vacate them in part,

and remand for further proceedings.

REVERSED in part, VACATED in part, and REMANDED.

MARK G. MATUSCHAK (Vinita Ferrera and Martin E. Gilmore, *on the brief*), Wilmer Cutler Pickering Hale and Dorr, LLP, Boston, MA and New York, NY, *for Defendant—Counter-Claimant—Appellant.*

JAMES M. BOLLINGER (Timothy P. Heaton, Puja Patel Lea, and Lindsay Mitchell Henner, *on the brief*), Troutman Sanders LLP, New York, NY and Atlanta, Georgia; J. Mark Lane and Sharon M. Sash, *on the brief*, Lane Sash & Larrabee LLP, White Plains, NY, *for Plaintiff—Counter-Defendant—Appellee.*

SACK, *Circuit Judge*:

This appeal arises from a dispute between software companies over several trademarks containing the word "collective." Appellant Collective, Inc. ("CI"), defendant and counter-claimant in the district court, owns the registered marks "Collective Network," "Collective Video," and "C Collective The Audience Engine," a stylized mark in which the word "Collective" appears most prominently (together, the "registered marks"). CI also asserts common-law rights in the unregistered mark "collective," standing alone. Appellee Cross Commerce Media, Inc. ("CCM"), plaintiff and counter-defendant in the district

2

court, operates under the name "Collective[i]."[1]  CI alleges that this name (and

two variants) infringes its registered and unregistered marks.  CCM seeks a

judgment to the contrary, along with a declaration that CI holds no common-law

rights in the unregistered mark "collective" and an order compelling the U.S.

Patent and Trademark Office ("PTO") to cancel or modify CI's registered marks.

In a series of three orders, the district court (Katherine B. Forrest, *Judge*)

granted summary judgment to CCM on virtually all points in dispute and

awarded attorney's fees under the Lanham Act.  We reverse those decisions in

part, vacate them in part, and remand for further proceedings.

## BACKGROUND

CI provides data-driven analytic software that helps businesses select

effective marketing opportunities on multiple electronic platforms, including

"computers, smart phones, tablets and connected television."  Declaration of

Joseph T. Apprendi, CEO and Co-Founder of CI, dated July 10, 2014, at 4-6

(App'x 559-61).  It was incorporated as Collective Media, Inc. in 2007, and its

name was changed to Collective, Inc. in 2012.   From 2008 to 2011, the company

---

[1] The bracketed letter "i" is part of the name.  The brackets are not, as they often are in other contexts, an indication of editing by the Court.

registered the trademarks "Collective Network," "Collective Video," and "C Collective The Audience Engine." During the same period, CI acquired the domain name www.collective.com for its principal website and referred to itself in at least several instances as "Collective."

CCM provides its own brand of data-driven analytic software. According to one of the company's trademark registrations, the software aids companies in "deploying and analyzing marketing campaigns." *See* CCM's Statement of Undisputed Material Facts dated June 11, 2014, at 6 (App'x 588). The company was founded as Cross Commerce Media, Inc. in 2007, but it began to do business under the mark "Collective[i]" (and the related marks "Collective Intelligence" and Collectivei) in 2011.

In late 2011, CI contacted CCM to express its concern that use of the mark "Collective[i]" in commerce would create confusion over the two companies because they operate in similar fields. After negotiations failed to solve the perceived problem, CI sent CCM a cease-and-desist letter in late 2012 asserting CCM's infringement of CI's trademarks, including the registered marks and the unregistered mark "collective." In response, CCM filed this action in the United States District Court for the Southern District of New York in an effort to

4

preempt an infringement lawsuit by CI.  CCM sought three remedies: a declaration that CI did not own trademark rights to the unregistered mark "collective"; a declaration that the name "Collective[i]" did not infringe any of CI's registered or unregistered marks; and an order compelling the PTO to cancel or modify the registered marks.  CI, in turn, filed counterclaims under the Lanham Act alleging that CCM's use of "Collective[i]" — along with "Collective Intelligence" and "Collectivei" — infringed CI's registered marks and the unregistered mark "collective."[2]

The district court resolved the parties' claims and counterclaims in a series of three orders.  First, before the parties had completed discovery, CCM moved for partial summary judgment as to the inherent distinctiveness of the unregistered mark "collective."  Trademarks, whether registered or unregistered, are grouped for purposes of analysis into four categories of increasing inherent distinctiveness: generic, descriptive, suggestive, and arbitrary or fanciful. *Bernard v. Commerce Drug Co.*, 964 F.2d 1338, 1340 (2d Cir. 1992).  CCM sought a decision by the district court that the unregistered mark "collective," as used by CI, is descriptive as a matter of law.  CI countered that the mark is suggestive —

_____

[2] CI also filed a counterclaim for unfair competition under New York common law, but that counterclaim was later dismissed with prejudice by stipulation of the parties.

or, alternatively, that a jury should decide the issue. In a March 24, 2014 order, the court, agreeing with CCM, classified the mark as descriptive. *Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13 Civ. 2754 (KBF), 2014 WL 1202939, at *5, 2014 U.S. Dist. LEXIS 38606, at *14-15 (S.D.N.Y. Mar. 24, 2014) (the "March Order").

The March Order did not reject CI's counterclaim for infringement of the unregistered mark "collective" outright. By classifying the mark as descriptive, however, the order imposed a heightened evidentiary standard for establishing its entitlement to protection under federal trademark law. The Lanham Act affords protection to a descriptive mark only if the trademark holder can demonstrate that it has acquired secondary meaning in the marketplace — in other words, that the mark's "primary significance" to relevant consumers "is to identify [the trademark holder as] the source of the product." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992) (internal quotation marks omitted). That showing "entails rigorous evidentiary requirements." *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir. 1987) (internal quotation marks omitted). Had the mark instead been classified as suggestive, it would have received some degree of trademark protection even "without proof of secondary meaning." *McGregor-Doniger Inc. v.*

6

*Drizzle Inc.*, 599 F.2d 1126, 1132 (2d Cir. 1979), *superseded on other grounds by* Fed. R. Civ. P. 52(a).[3]

Seeking to build on the March Order, CCM subsequently moved for summary judgment as to CI's counterclaim for infringement of the unregistered mark "collective," on two grounds. First, CCM argued that CI could not establish that the mark had acquired secondary meaning — which, as noted, would mean that it was not entitled to protection under the Lanham Act. Second, CCM contended that even if "collective" *had* acquired secondary meaning, CI could not establish infringement because it had not used the mark in commerce (and acquired corresponding trademark rights) until after CCM had introduced its own marks. CI argued in response that it had raised triable issues of fact as to both issues, precluding summary judgment. In an August 21, 2014 order, the district court again agreed with CCM, concluding that CI had no protectable rights in the unregistered mark "collective" both because the mark lacked secondary meaning and because CI had not used it in commerce before CCM

---

[3] Proof of secondary meaning may nonetheless be relevant when determining whether a suggestive mark has been infringed: Courts may "view evidence concerning the origin-indicating significance of a mark in the marketplace as relevant to and probative of the strength of a mark and hence useful in assessing the likelihood of confusion." *McGregor-Doniger*, 599 F.2d at 1132.

introduced its marks. *See Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13-cv-2754 (KBF), 2014 WL 11343849, at *1, 12-14, 2014 U.S. Dist. LEXIS 117244, at *2, 32-38 (S.D.N.Y. Aug. 21, 2014) (the "August Order"). The court therefore dismissed CI's counterclaim for infringement of the unregistered mark "collective."

Surprisingly, we think, the August Order also dismissed CI's distinct counterclaim for infringement of the registered marks. CCM's memorandum of law in support of its summary judgment motion had advanced no argument regarding that counterclaim. The memorandum mentioned the registered marks only to argue that their validity (which CCM assumed for the sake of argument) would not buttress CI's claim that the distinct, unregistered mark "collective" was protectable. In keeping with the cabined nature of CCM's memorandum, CI's opposition papers focused exclusively on the counterclaim for infringement of the unregistered mark "collective," mentioning the registered marks only to contend that their validity would, in fact, buttress that counterclaim. The district court did not analyze the counterclaim for infringement of the registered marks but nonetheless ruled that the counterclaim failed as a matter of law.

Having prevailed on CI's counterclaims for infringement, CCM moved for several remedies: (1) an order compelling the PTO to cancel the registered marks "Collective Network" and "Collective Video," either because they were descriptive and lacked secondary meaning or because CI had abandoned them; (2) an order compelling the PTO to disclaim the term "collective" within the registered mark "C Collective The Audience Engine" because it is not independently entitled to trademark protection; (3) attorney's fees under the Lanham Act; and (4) sanctions under various federal rules for abuse of the discovery process. In a December 16, 2014 order, the district court granted summary judgment for CCM on the issue of abandonment and awarded all of its requested remedies except for sanctions, which the court deemed duplicative of attorney's fees under the Lanham Act. *See Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13-cv-2754 (KBF), 2014 WL 7323419, at *1, 2014 U.S. Dist. LEXIS 177176, at *2 (S.D.N.Y. Dec. 16, 2014) (the "December Order").

CI timely appealed the portions of the district court's three orders that dismissed its counterclaims and granted CCM's requested remedies.

**DISCUSSION**

"We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (internal quotation marks omitted). We will affirm only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See SCR*, 559 F.3d at 137.

After applying that standard of review to the voluminous record in this case, we reverse or vacate all contested portions of the March Order, August Order, and December Order. We do so on four grounds. First, in our view the unregistered mark "collective" is suggestive, not descriptive. Second, there is a genuine dispute of material fact as to whether CI used the unregistered mark "collective" in commerce before CCM introduced its allegedly infringing marks. Third, the district court prematurely granted summary judgment as to CI's counterclaim for infringement of the registered marks, an action that neither party requested and the district court did not explain. Finally, there is a genuine

10

dispute of material fact as to whether CI abandoned its registered marks "Collective Network" and "Collective Video." We therefore remand the case for a new round of summary judgment proceedings should either party choose to pursue them.

**I.     Inherent Distinctiveness**

A trademark's inherent distinctiveness is a fact-intensive issue. It must be evaluated "in relation to the particular goods [to which the mark is attached], the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1378 (Fed. Cir. 2012) (internal quotation marks omitted). Applying that contextual approach, we conclude that CI's use of the mark "collective" is suggestive as a matter of law, and that the district court committed clear error in concluding otherwise. *See Bristol-Myers Squibb*, 973 F.2d at 1040 ("We will substitute our own judgment [as to inherent distinctiveness] . . . if the district court's determination is clearly erroneous.").

Both descriptive and suggestive marks convey information about, and thus are associated with, the product to which they are attached. The difference

11

between them lies in the immediacy of association — how quickly and easily consumers grasp the nature of the product from the information conveyed.  A descriptive mark communicates "'an immediate idea of the ingredients, qualities or characteristics of the goods,'" *Bernard*, 964 F.2d at 1341 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976) (Friendly, J.)), while a suggestive mark requires consumers to employ "imagination, thought and perception to reach a conclusion as to the nature of goods," *Time, Inc. v. Petersen Publ'g Co. L.L.C.*, 173 F.3d 113, 118 (2d Cir. 1999) (internal quotation marks omitted).  Thus, "[i]f the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness."  2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:67 (4th ed.).

To determine the immediacy of association between a mark and a product, we generally consider how specifically and exclusively the mark describes the product.  A descriptive mark, we have said, is one that "conjure[s] up the image" of the precise good with which it is associated.  *Playtex Prods., Inc. v. Ga.-Pac. Corp.*, 390 F.3d 158, 164 (2d Cir. 2004), *superseded by statute on other grounds as recognized in Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 107-08 (2d

12

Cir. 2009). A suggestive mark, by contrast, is ordinarily one that "describes an attribute of the product" but "could plausibly describe a wide variety of [other] products" as well. *Id.* In other words, the meaning of a descriptive mark is narrowly tailored to its associated product, such that it calls that product immediately to mind. The meaning of a suggestive mark typically evokes an array of goods, which means that consumers must make an additional mental effort to identify the associated product in particular.

Thus, in *Playtex*, we affirmed the district court's conclusion that the mark "Wet Ones," used for moist towelettes, was suggestive rather than descriptive. We reasoned that the mark evoked qualities (dampness and one-by-one usage) that towelettes shared with a wide range of goods, which made it relatively difficult for consumers to divine the nature of the particular product at issue from the mark alone. *See id.* Similarly, we decided in *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir. 1988), that the mark "GUNG-HO," used for a marine action figure, was suggestive because it described "elements of the personality attributed to the [action figure], *as well as other toys*, without describing the *particular* [action figure] itself or its differentiating qualities," *id.* at 75 (emphases added). By contrast, we have classified the mark "Sportscreme," used for an

13

analgesic rub designed for athletes, as descriptive because it specifically conjured "a cream useful in connection with sports." *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir. 1985).

Applying the same analytic framework here, we conclude that the mark "collective" is only suggestive of CI's products. As the district court noted, Merriam-Webster's online dictionary defines the adjective "collective" as: "denoting a number of persons or things considered as one group or whole"; "formed by collecting: aggregated"; and "of, relating to, or being a group of individuals." *Collective*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/collective (last visited Aug. 9, 2016), [https://perma.cc/YU2F-Q3JT]; *see* March Order, 2014 WL 1202939, at *5, 2014 U.S. Dist. LEXIS 38606, at *14.[4] The same dictionary defines the noun "collective" as "a collective body: group" or "a cooperative unit or organization." *Collective*, Merriam-Webster, *supra.*

[4] The author of this opinion has noted elsewhere his "general[] reticen[ce] to invoke dictionary definitions, at least in contexts perhaps unforeseen by their writers." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 107 (2d Cir. 2006) (Sack, J., concurring in part and dissenting in part). As the district court pointed out, however, the use of dictionaries for the purpose of deciding whether a trademark is descriptive is permissible. *See* March Order, 2014 WL 1202939, at *5, 2014 U.S. Dist. LEXIS 38606, at *13 (citing *Coach Servs.*, 668 F.3d at 1378). Moreover, it seems to us that these definitions of "collective" are reasonable and relatively uncontroversial. The district court therefore properly relied on them in the March Order, and we follow suit.

After reviewing the record, we find three plausible associations between those definitions and CI's products. First, CI asserts that it is able to analyze vast amounts of data in order to help clients identify effective marketing opportunities, a service that could be described as "collective" in nature — or, perhaps, producing a "collective" of relevant data. Second, CI points to its capacity to identify marketing opportunities across multiple electronic devices, which could be framed as offering consumers a "collective" of marketing platforms. And third, in the most general sense, the company's software works to aggregate advertising opportunities and present them, as a "collective," to users.

These associations lack the specificity that would enable an average consumer to intuit the nature of CI's business from the "collective" mark, at least absent considerable imaginative effort (or luck). As in *Playtex* and *Hasbro*, the mark has comparably strong associations with a range of distinct enterprises that offer unrelated goods, including software, to consumers: Search engines and investment advisers seek to aid their clients by analyzing "collectives" of data; health insurers and banks serve clients across a "collective" of platforms; and real estate brokers and online ticket exchanges could be said to offer a "collective" of

15

options for their clients to consider. Indeed, the word "collective" might even bring to mind businesses that could *themselves* be called "collectives," such as collective farms or collective grocery stores. When encountering CI's use of the term "collective" for the first time, therefore, the average consumer does not, in our view, have a compelling reason to conclude that the company provides data-driven marketing tools. Conjuring the image of CI's software in particular, rather than other goods or services that the word "collective" might be used to describe, demands a substantial mental leap. For that reason, we conclude that "collective" is a suggestive mark in this context.

In reaching a contrary conclusion, the district court did not adequately evaluate the mental leap between the mark "collective" and CI's products. After reciting several of the dictionary definitions set forth above, the court observed: "This is precisely the manner in which [CI] uses the word; it is an advertising network that offers a collection or collective of advertising opportunities." March Order, 2014 WL 1202939, at *5, 2014 U.S. Dist. LEXIS 38606, at *14. Based on that observation alone, the court then concluded that "[t]he word 'collective' thus literally describes 'an immediate idea of the ingredients, qualities or characteristics' of [CI]'s product." *Id.* (quoting *Bristol-Myers Squibb*, 973 F.2d at

16

1040). In doing so, the court mistakenly equated the fact of association (which does not distinguish between descriptive and suggestive marks) with immediacy of association (which does). The word "collective" in CI's marks provides a clue as to the nature of CI's products. But the critical inquiry, which the court did not reach, is how easily consumers would deduce the nature of CI's products from "collective" alone.

The district court suggested that its decision was reinforced by two additional considerations: the frequency with which third parties have used the word "collective" in their names, and the PTO's prior treatment of various trademark applications containing that word. *See id.*, 2014 WL 1202939, at *5, 2014 U.S. Dist. LEXIS 38606, at *14-15. To be sure, such considerations may, in some circumstances, inform a court's evaluation of inherent distinctiveness. In this case, however, the available evidence regarding third-party usage is indeterminate, while the PTO's prior practice indicates that "collective" is a suggestive mark.

As a general matter, information about how third parties have used a mark in commerce may shed light on its inherent distinctiveness in several ways. First, we have recognized that a mark is more likely to be descriptive, rather than

17

suggestive, if "[a]ccording [it] trademark exclusivity . . . would inhibit competitors from using descriptions of their competing products." *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 93-94 (2d Cir. 2001); *see also PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 563 (2d Cir. 1990) (noting that the distinction between descriptive and suggestive terms may be sharpened by "evaluation of . . . the potential impact on competitors of the appropriation of the term as a trademark by a particular seller").  Information about how rival third parties have used a mark could be instructive in that regard:  Consistent usage by competitors might indicate that it is a vital descriptive tool in the industry, while minimal usage might suggest the contrary.  Additionally, as we have observed, a mark is more likely to be suggestive, rather than descriptive, if its meaning evokes a wide range of products. *See Playtex*, 390 F.3d at 164.  Information about how third parties in unrelated industries have used a mark could bear on that issue:  Widespread usage by different types of businesses might indicate that it calls to mind a variety of products, while minimal usage might imply otherwise.

Here, the district court cited three statistics regarding third-party usage of the "collective" mark: (1) "[t]he word 'collective' is used in the name of over 7,000 businesses in 45 states"; (2) "[t]here are over 25,000 Internet domain names that

18

contain the word 'collective'"; and (3) "more than a dozen companies in the digital advertising and marketing field . . . also use the word 'collective.'" March Order, 2014 WL 1202939, at *5, 2014 U.S. Dist. LEXIS 38606, at *14-15. These statistics do not, in our view, provide enough information to be probative of the mark's inherent distinctiveness. It is unclear to what extent the first two numbers pertain to CI's competitors (in which case widespread use might indicate that "collective" is descriptive) or third parties in unrelated industries (in which case widespread use might indicate that "collective" is suggestive). The third statistic is somewhat more narrowly drawn, inasmuch as it relates only to companies involved with digital marketing. Even so, however, it is not limited to companies that produce software similar to CI's. And in any event, the fact that a dozen digital-marketing companies have used the word "collective" is a numerator without a denominator: A dozen companies could be a significant portion of the digital-marketing field (which might indicate that "collective" is a vital descriptive tool in the industry) or a tiny sliver (which might indicate that competitors need not rely on "collective" to describe their products). Overall, therefore, the cited evidence of third-party usage carries little weight regarding the inherent distinctiveness of "collective" in this case.

19

The PTO's prior treatment of trademark applications may inform a court's analysis of inherent descriptiveness in a different way. Before deciding whether to grant an application, the agency determines the inherent distinctiveness of the mark at issue — and, in many instances, its constituent parts. Because the agency has developed expertise in trademarks, courts accord "great weight" to its conclusions. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989). Thus, if the PTO has previously classified the particular mark before the court as either descriptive or suggestive, the court will generally follow suit absent compelling grounds for disagreement. *See, e.g.*, *PaperCutter*, 900 F.2d at 563 ("'[T]he decision of the [PTO] to register a mark without requiring proof of secondary meaning affords a rebuttable presumption that the mark is more than merely descriptive.'" (quoting *McGregor-Doniger*, 599 F.2d at 1132)). And even where the PTO has not previously considered the particular mark at issue, courts may draw a measure of guidance from the way the agency has classified analogous marks. *See, e.g.*, *Real News Project, Inc. v. Indep. World Television, Inc.*, No. 06 Civ. 4322 (GEL), 2008 WL 2229830, at *10-13 & n.17, 2008 U.S. Dist. LEXIS 41457, at *30-43 & n.17 (S.D.N.Y. May 27, 2008) (classifying the plaintiff's use of the mark "REAL NEWS" as descriptive and noting that the PTO's classification of

20

similar marks incorporating the term "real" as descriptive "confirm[ed] the Court's analysis").

The district court cited one statistic about the PTO's prior practice: The agency "has either required disclaimer of the use of the word 'collective' as being descriptive or rejected the application entirely on the same basis in 186 instances." March Order, 2014 WL 1202939, at *5, 2014 U.S. Dist. LEXIS 38606, at *15. Again, we are not convinced that this statistic is probative of inherent distinctiveness. It pertains to all uses of the word "collective" — not solely those analogous to CI's use of the word, where the PTO's analysis would be of import. And in any event, the figure is another numerator without a denominator. As we understand the record, the PTO has required disclaimer of the word "collective" because it is descriptive, or rejected applications for the same reason, 186 times *out of 534* — approximately thirty-five percent of the time. App'x 81. It is therefore far from clear that the PTO routinely classifies "collective" as a descriptive mark in any context, let alone the context relevant to this case.

In our view, the district court seems to have overlooked a more probative fact about the PTO's prior practice: Although each of CI's registered marks contains the word "collective," the PTO did not disclaim that word as descriptive

21

— or, as far as we can tell from the record, require a showing of secondary meaning — in any instance. That fact bolsters CI's argument that the mark should be classified as "more than merely descriptive." *PaperCutter*, 900 F.2d at 563 (internal quotation marks omitted).

We therefore reverse the portion of the March Order that concluded, as a matter of law, that "collective" is a descriptive mark. Although CI bore the burden of proving "collective" was suggestive, *see Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (noting that where the moving party has pointed to the absence of evidence to prove a fact material to an issue on which the opposing party has the burden of proof at trial, the opposing party has "the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial" (internal quotation marks omitted)); *Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980) (concluding that where "the mark is not registered," the burden is on the proponent to "prove that its mark is a valid trademark"), we think that the relevant evidence already in the record when CCM moved for partial summary judgment—including the dictionary definitions of "collective," the nature of CI's business, and the PTO's prior decisions regarding the

22

registered marks—uniformly supports the classification of "collective" as a suggestive mark. CI was not obligated to submit still more evidence to prevail on the issue.[5] Instead, we conclude that "collective" is a suggestive mark, which means it is entitled to some degree of trademark protection even absent proof of secondary meaning. *See McGregor-Doniger*, 599 F.2d at 1132. For that reason, we also vacate the portion of the August Order that dismissed CI's counterclaim for infringement of the unregistered mark "collective" based on CI's purported failure to show secondary meaning, along with the portion of the December Order that compelled the PTO to disclaim the word "collective" in "C Collective The Audience Engine."

---

[5] After issuing the March Order, the district court noted that it had classified "collective" as a descriptive mark in part because CI "failed to submit any marketing materials, survey research, or even an affidavit supporting suggestiveness." December Order, 2014 WL 7323419, at *1, 2014 U.S. Dist. LEXIS 177176, at *3; *see also* August Order, 2014 WL 11343849, at *11 n.10, 2014 U.S. Dist. LEXIS 117244, at *31-32 n.10 (reflecting similar reasoning). We have trouble following that rationale. CI moved to stay adjudication of the mark's inherent distinctiveness until after its expert had the opportunity "to perform survey research into, among other things, the factual issues relevant to . . . inherent . . . distinctiveness." Declaration of Eric J. Andalman in Support of CI's Fed. R. Civ. P. 56(d) Motion to Continue or Defer CCM's Motion for Partial Summary Judgment at ¶ 8, *Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13-cv-2754 (S.D.N.Y. Jan. 21, 2014), ECF No. 41. The district court denied CI's request. We thus fail to see how CI could subsequently be faulted for failing to submit relevant survey research.

Finally, we note that when CCM moved for summary judgment as to CI's counterclaim for infringement of the unregistered mark "collective," it presumably chose its arguments in light of the district court's classification of the mark "collective" as descriptive. We direct the district court, on remand, to give CCM a reasonable opportunity to re-file for summary judgment as to this counterclaim in light of our decision that the mark is suggestive. And, of course, the district court may reopen discovery to the extent it deems necessary or advisable.

**II.    CI's Use of "Collective" In Commerce**

In addition to its rulings regarding inherent distinctiveness and secondary meaning, the district court concluded that CI's counterclaim for infringement of the unregistered mark "collective" failed as a matter of law for an independent reason: CI had not used the mark in commerce until after CCM introduced its own marks. If that were so, CI would have possessed no rights that CCM could infringe, thus dooming its counterclaim. *See Hana Fin., Inc. v. Hana Bank,* 135 S. Ct. 907, 909 (2015) ("Rights in a trademark are determined by the date of the mark's first use in commerce."). But the record contains colorable evidence that CI began using "collective" continually in commerce well before CCM employed

24

its allegedly infringing marks in 2011. This evidence precludes summary judgment on the issue.

A mark is used in commerce when it is employed "to identify . . . goods or services" sold to consumers "in a given market." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir.), *cert. denied*, 552 U.S. 827 (2007). CI introduced the domain name www.collective.com for its principal website in late 2008. That website appears to have been commercial in nature: The record indicates that it described CI's products and sought to explain what "set[] [the company] apart" from its competitors. App'x 1095-96. And soon after the site went live, CI purchased several stand-alone advertisements that directed consumers to "collective.com" for more information about the company. *See* App'x 1125-27. Taken together, this evidence tends to establish that CI put its domain name, which features the stand-alone mark "collective," to continuous commercial use beginning sometime before 2011. Although the district court correctly noted that "the use of a phrase in a domain name does not necessarily mean that it is being used as a mark in commerce," August Order, 2014 WL 11343849, at *13, 2014 U.S. Dist. LEXIS 117244, at *35-36 (citing *TCPIP Holding Co.*, 244 F.3d at 104), the court erred in finding that, other than the use of "'collective' in its domain name and

email addresses," CI had "failed to" "bring forth additional evidence that it used the mark in its marketing materials," *id.* CI also used a capitalized version of the mark, "Collective," to refer to itself on its website, *see* App'x 1095, and in its advertising, *see* App'x 1125-27. Those references could reasonably be considered additional commercial uses of the mark. We therefore think that CI has raised a genuine issue of material fact as to whether it began using "collective" in commerce before CCM introduced its allegedly infringing marks, and we vacate the portion of the August Order that concluded otherwise.

**III.  CI's Counterclaim for Infringement of the Registered Marks**

As we have noted, the district court dismissed CI's distinct counterclaim for infringement of the registered marks without a thorough explanation. In this Circuit, claims for infringement must be analyzed under a two-prong test that looks first to whether the allegedly infringed mark "is entitled to protection," and second to whether use of the allegedly infringing mark "is likely to cause consumers confusion as to the origin or sponsorship" of the products to which it is attached. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). The likelihood of confusion must be analyzed with reference to the eight factors first articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961),

26

one of which is "the degree of similarity between the two marks," *id.* This framework has not been applied to CI's counterclaim for infringement of the registered marks. CCM never moved for summary judgment as to protectability or likelihood of confusion.

The district court may instead have concluded that CCM did not infringe the registered marks solely because it did not use them verbatim. In the March Order, the court observed: "There is no allegation in this case that CCM has used any of the [registered marks]. Rather, the issue before this Court is whether [CI] has a right to exclude CCM from use of the word 'collective' in its mark." March Order, 2014 WL 1202939, at *2, 2014 U.S. Dist. LEXIS 38606, at *5. Later, in the August Order, the court reiterated: "The key merits question in this litigation is whether CI has a protectable mark in the single word 'collective.'" August Order, 2014 WL 11343849, at *11, 2014 U.S. Dist. LEXIS 117244, at *31. These passages suggest that, in the district court's view, the differences between CI's registered marks and CCM's allegedly infringing mark were fatal to CI's counterclaim for infringement of the registered marks. We are unable to square any such conclusion with our case law. Although differences among the marks are relevant to one of the eight *Polaroid* factors — the degree of similarity between

27

the marks — they are not independently dispositive of CI's counterclaim.

Because the district court has not yet performed the more comprehensive legal analysis outlined above, we vacate the grant of summary judgment as to the registered marks.

In light of the above-quoted passage from the August Order, we think that CCM may have understood the district court to suggest that CI's counterclaim for infringement of the registered marks had effectively been dismissed. Indeed, after the district court issued the August Order, CCM moved for cancellation of two of the registered marks, a remedy eventually granted in the December Order.[6] CCM may have decided, on the basis of this understanding, to advance further summary judgment arguments only as to the counterclaim for infringement of the unregistered mark "collective." To avoid undue prejudice, we direct the district court, on remand, to permit CCM a reasonable opportunity to move for summary judgment as to the counterclaim for infringement of the

---

[6] In response, CI argued that cancellation would be inappropriate because the district court had dismissed all counterclaims for infringement without addressing "the validity of the registrations," which meant that its "rulings" had "mooted any justiciable interest in cancellation of the registrations." App'x 1422. On appeal, CCM characterizes CI's argument on this point as a waiver of its counterclaim for infringement of the registered marks. We disagree. CI argued that the district court's prior rulings had not analyzed the validity of its trademark registrations. The company did not disclaim its contention that CCM had infringed those registrations.

registered marks.  Again, the district court may re-open discovery to the extent it deems necessary or advisable.

**IV.    Cancellation of Registered Marks**

After granting summary judgment for CCM on CI's counterclaims, the district court found that CI had abandoned the marks "Collective Network" and "Collective Video" and, based on that abandonment, ordered the PTO to cancel the corresponding registrations.  *See* 15 U.S.C. § 1064(3) (authorizing petitions for cancellation on ground of abandonment); *id.* § 1119 (empowering district courts to compel cancellation).  "To determine that a trademark or trade name is abandoned, two elements must be satisfied: non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2d Cir. 1992) (citing *Silverman v. CBS Inc.*, 870 F.2d 40, 45 (2d Cir. 1989)).  The district court concluded that CCM had satisfied both elements, as a matter of law,[7] because "the undisputed evidence reveal[ed] that CI has not used the marks

---

[7] The district court construed CCM's motion for cancellation as one for summary judgment, although it was not styled as such.  *See* December Order, 2014 WL 7323419, at *2, 2014 U.S. Dist. LEXIS 177176, at *4-5.

29

'Collective Video' or 'Collective Network' in commerce." December Order, 2014

WL 7323419, at *2, 2014 U.S. Dist. LEXIS 177176, at *5. We disagree.

In our view, a reasonable factfinder could conclude that CI has made

extensive commercial use of both "Collective Network" and "Collective Video."

CI's vice president and creative director, Britta Hoskins, stated in a declaration

that the company had "continuously and extensively used, advertised, and

promoted its services using the . . . trademarks COLLECTIVE NETWORK and

COLLECTIVE VIDEO" from February 2011 to October 2014. Declaration of Britta

Hoskins dated October 6, 2014, at 1-2 (App'x 1428-29). To support that assertion,

Hoskins attached several exhibits to her declaration: (1) a 2014 screenshot of a

page on CI's website with the heading "Collective Network" and text describing

the company's services, including a paragraph titled "Why You Should Work

With Us," *see id.* at 2 & Ex. A (App'x 1429, 1433) (capitalization removed); (2) a

2013 screenshot of a page on CI's website that describes the advantages of the

"Collective Video experience," *see id.* at 3 & Ex. C (App'x 1430, 1438); (3) an

excerpt from CI's "standard slide deck that it uses to respond to prospective

client[s]," which lists the features of "Collective Video," *see id.* at 3 & Ex. B (App'x

1430, 1436); and (4) several stand-alone advertisements for "Collective Video"

that were created and distributed in 2011 or 2012, *see id.* at 3 & Ex. D-F (App'x 1430, 1440, 1442, 1444). Taken together, this evidence could support a finding that CI used the two marks in commerce for several years before this lawsuit was commenced.

In concluding otherwise, the district court noted that another CI employee, Aman Verjee, gave markedly different testimony about the company's use of "Collective Network" and "Collective Video." Speaking as CI's corporate representative under Federal Rule of Civil Procedure 30(b)(6), Verjee stated that he was not aware of any commercial use of either mark. *See* May 29, 2014 Deposition of Aman Verjee, at 103:17-104:15, 105:13-18 (App'x 1402:17-1403:15, 1404:13-18). In the district court's view, this testimony was decisive because it was the only relevant evidence in the record: "As CI has offered no evidence supporting a specific use of the marks in commerce," the court reasoned, "there is no evidence counter to that of its own corporate designee on this topic, Aman Verjee, who testified of no known use." December Order, 2014 WL 7323419, at *2 n.1, 2014 U.S. Dist. LEXIS 177176, at *5-6 n.1. As we have noted, we find Hoskins' affidavit and corresponding exhibits to constitute such evidence, thereby creating a genuine issue of material fact on the issue of commercial use

31

sufficient to defeat CCM's motion to cancel CI's trademark registrations.

Accordingly, we vacate the district court's December Order finding that CI had abandoned the marks "Collective Network" and "Collective Video," and vacate the district court's subsequent cancellation order to the PTO.

**V.     Attorney's Fees**

In light of the foregoing, we also vacate the December Order's award of attorney's fees.  The Lanham Act authorizes such fees for the prevailing party in "exceptional" cases.  15 U.S.C. § 1117(a).  Because neither party has yet prevailed, the district court's award was at best premature.

**CONCLUSION**

For the foregoing reasons, we REVERSE the district court's orders in part, VACATE them in part, and REMAND for further proceedings.