**23-325-cv**
*City of New York v. Henriquez*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2023

ARGUED: JANUARY 19, 2024
DECIDED: APRIL 16, 2024

No. 23-325-cv

THE CITY OF NEW YORK, by and through the FDNY, and FDNY
FOUNDATION, INC.,
*Plaintiffs-Counter Defendants-Appellants,*

*v.*

JUAN HENRIQUEZ,
*Defendant-Counter Claimant-Appellee,*

MEDICAL SPECIAL OPERATIONS COMMUNITY, INC.,
*Defendant.*

————

Appeal from the United States District Court
for the Eastern District of New York.

————

Before:  LIVINGSTON, *Chief Judge*, AND WALKER AND CARNEY, *Circuit Judges*.

————

To first responders, "medical special operations" has a special meaning: providing care in extraordinary circumstances, such as combat zones or urban disasters. It is only natural that a meeting for those working in this field might be called a "Medical Special Operations Conference." And, indeed, Appellee Juan Henriquez convened several meetings under that name. But the most natural name is often not the one that receives the most protection under our trademark law. We conclude that "Medical Special Operations Conference" does nothing more than describe what Henriquez's meetings involved. The district court (Matsumoto, *J.*) thought otherwise and enjoined Appellants the City of New York and the FDNY Foundation from calling their own events "Medical Special Operations Conferences." That judgment rested upon a misunderstanding of how we ascertain how much protection a trademark warrants. We therefore VACATE the preliminary injunction and REMAND for further proceedings.

————

> MACKENZIE FILLOW (Richard Dearing, Devin Slack, *on the brief*), *for* Sylvia O. Hinds-Radix, Corporation Counsel for the City of New York, New York, NY, *for Plaintiffs-Counter Defendants-Appellants the City of New York, by and through the FDNY, and FDNY Foundation*.
>
> JORDAN FLETCHER, Fletcher Law, PLLC, New York, NY, *for Defendant-Counter Claimant-Appellee Juan Henriquez*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

To first responders, "medical special operations" has a special meaning: providing care in extraordinary circumstances, such as

combat zones or urban disasters. It is only natural that a meeting for those working in this field might be called a "Medical Special Operations Conference." And, indeed, Appellee Juan Henriquez convened several meetings under that name. But the most natural name is often not the one that receives the most protection under our trademark law. We conclude that "Medical Special Operations Conference" does nothing more than describe what Henriquez's meetings involved. The district court (Matsumoto, *J.*) thought otherwise and enjoined Appellants the City of New York and the FDNY Foundation from calling their own events "Medical Special Operations Conference." That judgment rested upon a misunderstanding of how we ascertain how much protection a trademark warrants. We therefore VACATE the preliminary injunction and REMAND for further proceedings.

## BACKGROUND[1]

Juan Henriquez is a rescue paramedic with the Fire Department of New York ("FDNY"). Since 2007, he has been under the FDNY's "special operations command." App'x 659–60.

In 2009 or 2010, Henriquez attended a conference organized by the Special Operations Medical Association ("SOMA"), a group dedicated to emergency medical response in the military. Henriquez was impressed by SOMA's offerings—so much so that he and some colleagues began planning their own conferences, which he indicated were "based off of" the SOMA meetings, but geared toward civilian emergency responders. App'x 688.

Henriquez did not need to look far for a name. He called his gatherings "Medical Special Operations Conferences," sometimes

---

[1] Unless otherwise noted, the facts set forth here are drawn from the record developed at the preliminary-injunction stage and are undisputed.

using the acronym "MSOC."

In 2011 and 2012, Henriquez and his colleagues organized two MSOCs, one in Ohio and one in Georgia.

Early on, Henriquez sought to collaborate with his employer. He discussed his work with Dr. Doug Isaacs, who was then the FDNY's Assistant Medical Director.  Dr. Isaacs suggested the FDNY and Henriquez might partner to host MSOCs in New York.

This partnership soon proved productive.  For six years starting in 2013, Henriquez helped organize annual MSOCs in New York. These were called "MSOC at FDNY," "FDNY MSOC [year]," or "MSOC [year] at FDNY."  *City of New York by and through FDNY v. Henriquez*, No. 22-CV-3190, 2023 WL 2186340, at *4 (E.D.N.Y. Feb. 23, 2023); App'x 98, 104, 106, 108, 127, 142, 145, 146–48.  During that six-year period, Henriquez continued convening MSOCs outside New York, with no FDNY involvement.  *Henriquez*, 2023 WL 2186340, at *6.

But things started to go sideways.  In late 2017, Henriquez came to believe that the FDNY was misusing its MSOC funds.  The next year, he began asking the FDNY to remove any references to MSOC from its website and printed media.   And in 2019, Henriquez participated in his last FDNY MSOC.

Seeing trouble, Henriquez turned to trademark law.  The "core federal trademark statute" is the Lanham Act. *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 145 (2023).   That statute "establishes a system of federal trademark registration" under the auspices of the U.S. Patent and Trademark Office ("P.T.O."). *U.S. Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2302 (2020). While registration is not strictly necessary to receive judicial protection, it "gives trademark owners valuable benefits" against potential infringement. *Iancu v. Brunetti*, 588 U.S. 388, 391 (2019).

In late 2019, Henriquez asked the P.T.O. to register the mark "Medical Special Operations Conference" under his name. The P.T.O. rejected his application because, in its view, "Medical Special Operations Conference" simply described the events Henriquez organized. Under the Lanham Act, "merely descriptive" marks usually cannot be registered. U.S.P.T.O., Application No. 88693056, Office Action Outgoing (Feb. 26, 2020) at 2 (citing 15 U.S.C. § 1052(e)(1)); App'x 756–57.

That rejection was not the end of the matter. Section 2(f) of the Lanham Act on occasion allows registration even of "descriptive" marks. *See* 15 U.S.C. §§ 1052(e), (f). To take advantage of this provision, an applicant must attest he has been using the mark on a "substantially exclusive and continuous" basis for the five years preceding his application. *See id.* In April 2020, Henriquez amended his application to do just that. *See* U.S.P.T.O., Application No. 88693056, Response to Office Action Outgoing (Apr. 20, 2020). This time, he was successful: in August 2020, the P.T.O. registered "Medical Special Operations Conference" under Henriquez's name.

The FDNY, too, claimed rights over "Medical Special Operations Conference." First, in 2019, the FDNY asked Henriquez to stop using that name for his events. Then, in May 2022, following a two-year, pandemic-induced hiatus, the FDNY hosted an MSOC without Henriquez's involvement.

Eventually, the FDNY brought this action in which, among other things, it sought cancellation of Henriquez's trademark. *See Henriquez*, 2023 WL 2186340, at *8; App'x 19–38. Henriquez counterclaimed, alleging, in part, infringement by the FDNY.

Henriquez sought a preliminary injunction to bar the FDNY from using the marks. Following a two-day evidentiary hearing, the

district court granted Henriquez's request. Thereafter, it broadened the injunction to prohibit the FDNY from using any sequence of "medical," "special," and "operations" in its branding. Sp. App'x 96.

This appeal followed.[2]

## DISCUSSION

The FDNY argues that the district court abused its discretion by enjoining its use of the marks. Alternatively, and more modestly, it contends that the revised injunction is overbroad.

We agree with the FDNY on its first argument and therefore need not reach its second. The district court abused its discretion by granting Henriquez's motion, even before it broadened the injunction. The district court made several errors, which all implicate the same issue: whether "Medical Special Operations Conference" is a suggestive mark, as the district court found, or a descriptive mark, as the P.T.O. found. We agree with the P.T.O. Because the mark is descriptive, it merits little protection under federal trademark law.

## I.    Preliminary Injunction Standard.

To get a preliminary injunction in the trademark context, Henriquez must show three things: (1) he will suffer irreparable harm; (2) he is likely to succeed on the merits; and (3) an injunction would serve the public interest. *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022). Only the second factor—Henriquez's

---

[2] On April 16, 2023, after the FDNY filed its notice of appeal, the district court denied the FDNY's motion for reconsideration under Fed. R. Civ. P. 59(e) and 60(b). *See City of N.Y. by and through FDNY v. Henriquez*, No. 22-CV-3190, 2023 WL 4490287 (E.D.N.Y. Apr. 16, 2023).

likelihood of success on the merits—is at issue here.[3]

## II.     General Lanham Act Principles.

"[A] mark tells the public who is responsible for a product" or, in this case, for a conference. *Jack Daniel's*, 599 U.S. at 146. As Justice Kagan pointed out in that case, "whatever else it may do, a trademark is not a trademark unless it identifies a product's source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)." *Id.* Protecting these distinctions, for the sake of consumers and producers alike, is trademark law's "principal purpose." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012).

Confusion as to source is thus our central concern here. We assume in this appeal that Henriquez possesses "Medical Special Operations Conference" as a "valid" trademark that, as a threshold matter, is "entitled to protection." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020). But to prevail, he must further show that the FDNY's actions are "likely to cause confusion with that mark." *Id.* (internal quotation marks omitted and alteration incorporated).

We assess the likelihood of confusion within the framework of the familiar "*Polaroid* factors" outlined in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). There, Judge Friendly identified eight considerations as useful in determining whether

---

[3] Instead of showing that he is likely to succeed on the merits, Henriquez could show that there are "serious questions" on the merits and that the balance of hardships is decidedly heavier for him. *RiseandShine*, 41 F.4th at 119. But that theory has not been argued in this case.

alleged infringement will cause confusion as to products' sources.[4] Only one of these factors is at issue here: the strength of the mark.

But that factor is important indeed. "Strength" refers to a mark's "tendency to uniquely identify the source of the product." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005). Because a strong mark indicates a product's source, imitation of that mark—even if only in meaning, rather than in appearance or sound— is especially likely to cause confusion. Consumers might well confuse "Tornado" wire fencing with "Cyclone" wire fencing. *See Hancock v. Am. Steel & Wire Co. of N.J.*, 203 F.2d 737, 740, 741 (C.C.P.A.1953); 3 McCarthy on Trademarks and Unfair Competition § 23:26 (5th ed. 2023). But they might not think "Arthriticare" and "ArthriCare" uniquely identify the same company's arthritis medication, because the former does not uniquely identify any company's medication in the first place. *Bernard v. Com. Drug Co.*, 964 F.2d 1338, 1341 (2d Cir. 1992). For this reason, "[w]eak marks" generally merit "extremely narrow" protection. *RiseandShine*, 41 F.4th at 124.

## III.   Standard of Review.

We review the district court's decision to grant a preliminary injunction for abuse of discretion. *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 167 (2d Cir. 2001). A district court abuses its discretion when (1)

---

[4] These are: (1) the strength of the mark; (2) the similarity between the two marks; (3) the proximity of the products and their competitiveness with one another; (4) the likelihood the prior owner may "bridge the gap" in the markets for their products; (5) the evidence of actual consumer confusion; (6) the defendant's good faith in adopting its imitative mark; (7) the quality of the defendant's product compared with the plaintiff's product; and (8) the sophistication of the buyers. *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 136 (2d Cir. 2023) (per curiam). "Bridging the gap" may seem the most mysterious. It "refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 387 (2d Cir. 2005).

its decision rests upon an error of law or a clearly erroneous factual finding, or (2) its decision otherwise cannot be located within the range of permissible decisions. *Id.* at 169. Relevant here, a decision "rests on an error of law" either because it applies the wrong legal principle, *id.*, or because it incorrectly applies the right legal principle, *see RiseandShine*, 41 F.4th at 119.

We examine the district court's legal judgments *de novo*, in no way constrained by the district court's determination. Whether Henriquez has shown that the FDNY's conduct is likely to cause confusion with his trademarks is a legal question. *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 109 (2d Cir. 2023). So is the strength of Henriquez's marks. *Tiffany & Co.*, 971 F.3d at 86 n.7. Thus, we examine both issues *de novo*.

## IV.  The District Court Abused Its Discretion by Issuing a Preliminary Injunction Against the FDNY.

The district court overestimated the trademark strength of "Medical Special Operations Conference," and this legal error was central to its decision to award Henriquez a preliminary injunction. Therefore, issuing the injunction was an abuse of discretion.

### a.  Trademark Strength Principles.

Trademarks can be strong—that is, they can "uniquely identify the source of the product"—in two ways. *Bacardi & Co.*, 412 F.3d at 384.

First, although less important in this case, marks can "acquire[]" strength. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003). That occurs when marks become recognizable through commerce. *See id.* For example, "American Airlines" would not have been distinctive when the company started doing business. Now, the

mark connotes a particular enterprise.  *See* 2 McCarthy on Trademarks and Unfair Competition § 11:80.

Second, and most important here, is inherent strength.  Marks are inherently strong to the extent they are arbitrarily linked to their products.  *See id.*  For example, using "Black Ice" as the name for automobile air fresheners is highly arbitrary.  *See Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020).  Using "Arthriticare" for an arthritis treatment, far less so.  *Bernard*, 964 F.2d at 1341.

It is helpful to understand that trademark law designates four categories of inherent strength.  From weakest to strongest, these are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.  *RiseandShine*, 41 F.4th at 120.  These categories help determine whether a mark is "entitled to protection" in the first place.  *Tiffany & Co.*, 971 F.3d at 84 (internal quotation marks omitted).

1.  Merely generic marks (such as "Honey Brown Ale," for a brown ale brewed with honey) can receive no trademark protection.  *See Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 148 (2d Cir. 1997)**.**

2.  Descriptive marks (such as "Arthriticare," for an arthritis treatment) can receive trademark protection only if they acquire enough public recognition as identifying the source of the underlying products.  *See Bernard*, 964 F.2d at 1340.  We call the amount of recognition necessary for protection "secondary meaning."  *Id.*

3.  Suggestive marks (such as "Tide" for laundry detergent) can receive trademark protection absent proof of secondary meaning.  *Booking.com*, 140 S. Ct. at 2302.

4. Arbitrary marks (such as "Black Ice" for air fresheners), *see Car-Freshner Corp.*, 980 F.3d at 329, and fanciful marks coined only for trademark use (such as "Exxon" for oil and gasoline products), *see Exxon Corp. v. XOIL Energy Res., Inc.*, 552 F. Supp. 1008, 1014 (S.D.N.Y. 1981), likewise can be valid trademarks without proof of secondary meaning.

In this case, these categories also serve a different function: they guide our inquiry into the likelihood of confusion under *Polaroid*.

**b. The District Court Overestimated the Strength of Henriquez's Marks.**

The district court concluded that Henriquez's marks—"Medical Special Operations Conference" and "MSOC"—were "at least strongly suggestive." *Henriquez*, 2023 WL 2186340, at *16. This was erroneous when considering the marks in the proper context. "Medical Special Operations Conference" is only inherently descriptive. For the same reasons, "MSOC" is also descriptive.

The district court's classification rested upon three missteps. *First*, the district court overlooked Henriquez's own concessions that the marks are descriptive. *Second*, it misunderstood the P.T.O.'s judgment that the marks are descriptive. And *third*—and most importantly—it evaluated the marks' inherent strength without regard to the relevant market context. We consider each point in turn.

**i. The District Court Did Not Consider Henriquez's Concessions that the Marks Are Descriptive.**

Henriquez twice relied on the notion that that the marks are descriptive. The district court should have considered these statements as concessions when determining the marks' strength.

What parties say about their marks matters.  When a trademark holder makes one argument to the P.T.O. and then another to a court, the court has good reason to be skeptical.  *See* 6 McCarthy on Trademarks § 32:111.  At the very least, any inconsistency reveals that there is more than one way to view the issue.  Moreover, "[i]n our adversarial system," we expect courts to respond to parties' arguments—not just to develop their own views.  *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).

Henriquez plainly viewed the marks as descriptive.  Henriquez sought registration of "Medical Special Operations Conference" under § 2(f) of the Lanham Act, which permits registration of marks that have acquired secondary meaning.  *See Henriquez*, 2023 WL 2186340, at *7; 15 U.S.C. § 1052(f); 2 McCarthy on Trademarks and Unfair Competition § 12:58.  Similarly, before the district court, Henriquez argued that the mark was "valid based on its acquired secondary meaning."  App'x 228.  As we noted above, only descriptive marks require secondary meaning to be valid.  *See Booking.com*, 140 S. Ct. at 2302.  Thus, by relying upon secondary meaning, Henriquez effectively conceded that the marks are descriptive.

The district court should have recognized these concessions as relevant; instead, it overlooked them.  To be sure, this mistake alone might not require vacatur.  But the district court's failure to recognize that Henriquez's own statements "cast doubt" upon its holding that the marks are suggestive was legal error nonetheless.  6 McCarthy on Trademarks § 32:111.

The FDNY urges us to adopt the harsher rule of prosecution estoppel.  It argues that we should hold Henriquez to his concessions and presume that the marks are only descriptive.  This appears to be the practice of one of our sister circuits.  *See Sturgis Motorcycle Rally*,

*Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 322 (8th Cir. 2018). *But cf. Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 22–23 (1st Cir. 2008).

We decline to adopt the FDNY's proposal. The marks' inherent strength is a legal question. *Tiffany & Co.*, 971 F.3d at 86 n.7. We must "rely on the parties to frame the issues" litigated. *Sineneng-Smith*, 590 U.S. at 375 (internal quotation marks omitted). But we also "retain[] the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). We therefore conclude that Henriquez's concessions are not necessarily dispositive. Rather, they are "simply . . . factor[s] in the evidentiary mix." *Boston Duck Tours*, 531 F.3d at 22–23.

### ii. The District Court Did Not Consider the P.T.O.'s Determination that the Marks are Descriptive.

Henriquez was not the only one to classify the marks as descriptive; the P.T.O. did so too. The district court should have considered the P.T.O.'s judgment in reaching its own. That the district court failed to do so reflected a misunderstanding of the P.T.O.'s decision.

The P.T.O.'s assessment of a mark's inherent strength typically informs our analysis. The P.T.O., as a specialized agency, "has developed expertise in trademarks." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 165 (2d Cir. 2016). Its "body of experience and informed judgment" generally give its determinations on the issue of inherent strength the "power to persuade," though not the "power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). We therefore accord "great weight" to the P.T.O.'s conclusions and

depart from them only for "compelling" reasons. *Cross Com. Media*, 841 F.3d at 165 (internal quotation marks omitted).

The district court correctly stated that "[r]egistration by the [P.T.O.] without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive." *Henriquez*, 2023 WL 2186340, at *16 (quoting *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)). But that principle does not apply here.

Following Henriquez's initial application, the P.T.O. expressly determined that "Medical Special Operations Conference" "merely describe[d]" the events that Henriquez organized. U.S.P.T.O., Application No. 88693056, Office Action Outgoing (Feb. 26, 2020) at 2. Subsequently, as we have noted, Henriquez offered evidence of secondary meaning under § 2(f) of the Lanham Act. *See* U.S.P.T.O., Application No. 88693056, Response to Office Action Outgoing (Apr. 20, 2020). This evidence permitted the P.T.O. to register the mark but did not alter the P.T.O.'s classification of the mark as descriptive. Thus, the proper presumption, as Henriquez's counsel acknowledged at oral argument, was that the marks are inherently descriptive but had acquired secondary meaning that permitted registration. *See* Tr. of Oral Arg. 7:13–20.

In sum, the district court misunderstood the P.T.O.'s determination. Consequently, it did not give the P.T.O.'s conclusion that the marks are inherently descriptive any weight, let alone "great weight." *Cross Com. Media*, 841 F.3d at 165 (internal quotation marks omitted). This was legal error.

> ### iii. We Assess Marks for Their Distinctiveness Among Players Within the Relevant Market and,

> **in that Context, Henriquez's Marks Are Inherently Descriptive.**

We principally determine a mark's strength by reference to "the market in which the mark is used." *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999). We have noted that suggestive marks, unlike descriptive ones, "sometimes requir[e] imagination" to understand. *RiseandShine*, 41 F.4th at 121. For example, "Tide" evokes a cleansing wave, but does not directly describe laundry detergent. *See Booking.com*, 140 S. Ct. at 2302. But what might require "imagination" for market outsiders might be familiar to insiders. When this is so, a mark may be descriptive, even if its meaning is obscure to those beyond its intended audience.

The district court reasoned that "[t]he words ['Medical Special Operations Conference'] literally suggest a special medical operation or surgery, rather than the distinct meaning that Mr. Henriquez has provided." *Henriquez*, 2023 WL 2186340, at *17. Many people—and indeed, many judges—might well think so, but such perceptions do not determine our inquiry. Rather, we must consider what "medical special operations" signified to those to whom the marks were addressed: prospective MSOC attendees.

Both Henriquez and the P.T.O. recognized that this audience considered the marks descriptive. Henriquez attested that he sought "to bring military-level *special operations medical* skills and training to the wider first responder community via a series of conferences." App'x 64 (emphasis added). Similarly, the P.T.O. described MSOCs as "conference[s] for individuals involved in *medical special operations*." U.S.P.T.O., Application No. 88693056, Office Action Outgoing (Feb. 26, 2020) at 2 (emphasis added). These statements were consistent with hearing testimony indicating that fire and police

departments across the country (including the FDNY) use the term "special operations." App'x 660, 687, 891–92.

By all accounts, then, the events Henriquez organized were precisely what the mark "Medical Special Operations Conference" promised. When a mark corresponds so closely to the product it designates, we cannot hold it to be suggestive. The same is true for the acronym "MSOC." "Recognizable abbreviations" for inherently descriptive (or generic) marks are usually themselves inherently descriptive (or generic). 1 McCarthy on Trademarks § 7:11. There is no reason here to depart from this general rule.

We therefore part ways from the district court and hold that the marks are inherently descriptive.

## V.    The District Court's Errors Rendered Its Issuance of the Preliminary Injunction an Abuse of Discretion.

The district court's analysis of the likelihood of confusion under *Polaroid* did not end with the strength of the mark. It also held that every other *Polaroid* factor favored Henriquez. *See Henriquez*, 2023 WL 2186340, at *18–19 (similarity), *19–20 (proximity), *20 ("bridging the gap"), *20–22 (actual confusion), *22 (good faith), *22 (quality), *22–23 (consumer sophistication).

We "generally do not treat any one *Polaroid* factor as dispositive in the likelihood of confusion inquiry." *RiseandShine*, 41 F.4th at 124 (quoting *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000)). So, it is possible for even weaker marks to receive some protection.

Still, as this case illustrates, a mark's strength is especially important. *See id.* at 119. "Weak marks" merit only "extremely narrow" protection unless a combination of other *Polaroid* factors

"strongly" indicates a likelihood of confusion. *Id.* at 124 (internal quotation marks omitted). Moreover, even these other factors sometimes depend upon the mark's strength. *See, e.g.*, *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 135 (2d Cir. 2004). We are therefore reluctant to affirm any preliminary injunction founded upon an erroneous strength analysis.

Significantly, Henriquez does not rely upon *Polaroid* factors other than the strength of the mark to defend the injunction. Instead, he contends that, even if the marks have little "inherent distinctiveness," they have sufficient "acquired distinctiveness" to warrant protection against the FDNY's alleged infringement. *Souza*, 68 F.4th at 111; *see* Henriquez Br. at 32–34; Tr. of Oral Arg. 14:25–15:2. But, as Henriquez also recognizes, this argument turns on when and how the marks developed secondary meaning. We discuss this issue further below, in Part VI.

Unlike the district court, we take the same view as Henriquez: the marks' inherent strength dominates the *Polaroid* analysis here. "An abuse of discretion may be found when the district court relies on clearly erroneous findings of fact or on an error of law in issuing the injunction." *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 133 (2d Cir. 2023) (per curiam) (quoting *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*, 886 F.2d 490, 493 (2d Cir. 1989)). Of course, we are free to affirm on any ground supported by the record. *See, e.g.*, *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004). But mindful of "the principle of party presentation," we decline to

conduct a *Polaroid* analysis that neither party has requested. *Sineneng-Smith*, 590 U.S. at 375.

***

To sum up: the district court erred in assessing the likelihood of confusion. This led to an error in determining Henriquez's likelihood of success on the merits. These mistakes rendered issuance of a preliminary injunction an abuse of discretion. We therefore must vacate the preliminary injunction and leave it for the district judge to conduct the appropriate analysis based on our view of the marks' inherent strength.

## VI. We Leave Henriquez's Licensee-Estoppel Theory for the District Court to Assess in the First Instance.

Finally, Henriquez offers a second argument, which the district court did not reach: his "licensee-estoppel" theory.

His argument runs as follows. Henriquez helped organize the FDNY's MSOCs from 2013 to 2019. During that time, the FDNY could rightfully use the marks only because it had implicitly received his permission to do so. By accepting this implied license, the FDNY recognized that its use of the marks would benefit Henriquez as a rights-holder. In 2022, Henriquez and the FDNY became competitors. But by then, Henriquez argues, the marks had gained secondary meaning: they had come to uniquely designate his events within the relevant market. Thus, even if the marks are descriptive—as we have now determined—Henriquez holds rights over them. And the FDNY, having previously recognized his rights, cannot now change course; it is estopped. *See* Henriquez Br. 34–46.

This licensee-estoppel theory raises various questions that we are ill-positioned to assess in the first instance. Rather, they are best

left for now in the hands of the district court.  We therefore express no view as to the theory's merits.

We foresee several issues that the district court may need to address if Henriquez renews this theory.  They include:

1. Whether a party who uses a mark subject to an implied license from the mark holder is estopped from contesting the mark's validity.

2. Whether any licensor may obtain trademark rights over a descriptive mark when secondary meaning is acquired, in whole or in part, through the mark's use by a licensee.

3. Whether any FDNY official with whom Henriquez worked had actual or apparent authority to enter licensing contracts concerning the FDNY's use of the marks.

4. Whether any FDNY official entered a licensing contract with Henriquez concerning the FDNY's use of the marks.

5. Whether any such contract subjected the FDNY's use of the marks to a license from Henriquez.

6. Whether the marks acquired secondary meaning through the FDNY's use.

Even if the district court determines that the FDNY did not use the marks pursuant to a license from Henriquez, it may nonetheless need to address whether and when the marks acquired secondary meaning.  We entrust consideration of these matters and any others that might arise on remand to the able district court.

**CONCLUSION**

We VACATE the preliminary injunction and REMAND for further proceedings consistent with this opinion.